# EXHIBIT A

Filing # 160601290 E-Filed 11/03/2022 04:28:20 PM

### IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
### IN AND FOR POLK COUNTY, FLORIDA
### SMALL CLAIMS DIVISION

John Peters,

    *Plaintiff,*

    v.

Equifax Information Services, LLC,

    *Defendant.*

Case No: _____

**JURY TRIAL DEMANDED**

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **John Peters**, ("**Mr. Peters**"), by and through his attorneys,

Seraph Legal, P.A., and complains of the Defendant, **Equifax Information Services, LLC**

("**Equifax**"), stating as follows:

### PRELIMINARY STATEMENT

1.    This is an action for damages not to exceed $8,000, brought by Mr. Peters against

Equifax for violations of the **Fair Credit Reporting Act**, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2.    Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and Section 34.01, Florida

Statutes.

3.    Equifax is subject to the provisions of the FCRA and is subject to the jurisdiction

of the Court pursuant to Section 48.193, Florida Statutes.

4.    Venue is proper in Polk County, Florida, pursuant to Section 47.051 Florida

Statutes, because the acts complained of were committed and / or caused by the Defendant within

Polk County.

2022SC-008278-0000-LK    Received in Polk 11/04/2022 01:59 AM

## PARTIES

5.    **Mr. Peters** is a natural person residing in Lakeland, Polk County, Florida.

6.    Mr. Peters is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

7.    **Equifax** is a Georgia corporation, with a primary business address of **1550 Peachtree Street NW, Atlanta, GA 30309**.

8.    Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

9.    Equifax is a nationwide *Consumer Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet. As a CRA, Equifax is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Mr. Peters' August 2022 Consumer Disclosure

10.    On or about August 16, 2022, Mr. Peters requested a copy of his consumer credit disclosure from Equifax.

11.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mr. Peters' request, Equifax was required to "clearly and accurately" disclose all information in Mr. Peters' file at the time of his request, with the limited exception that his Social Security number could be truncated upon request.

12. Equifax provided an electronic copy of Mr. Peters' *Consumer Disclosure* ("**Equifax's Disclosure**") to him at his home address in Lakeland, Florida.

### Equifax's Disclosure Was Not Complete, Clear, or Accurate

### Missing Original Creditors

13. Despite a requirement to disclose all information in his credit file at the time of his request, Equifax's Disclosure omitted significant amounts of information contained in his credit file.

14. Equifax's Disclosure indicated that Mr. Peters' credit file contained three (3) accounts classified as "Other." **SEE PLAINTIFF'S EXHIBIT A.**

15. Equifax's Disclosure stated: "Other accounts are those that are not already identified as Revolving, Mortgage, or Installment Accounts such as child support obligations or rental agreements." *Id.*

16. The accounts appearing in the "Other" section were reported by Midland Credit Management ("**MCM**").

17. MCM is a *Debt Buyer* – a company whose primary purposes are the purchase and collection of debts which were originally owed to third parties.

18. As MCM does not lend to consumer, it is *never an Original Creditor*.

19. Despite this, when disclosing the MCM tradelines to Mr. Peters, Equifax indicated that MCM was the *Original Creditor* of the accounts, omitting any reference to the *Original Creditor*.

20. Despite being required to provide a full and complete disclosure of the information contained within its records, per 15 U.S.C. § 1681g(a), under the "Account Details" section of the

2022SC-008278-0000-LK      Received in Polk 11/04/2022 01:59 AM

account, Equifax placed a notation, "Contact the creditor or lender if you have any questions about it." *Id.*

21.    Equifax thus shifted the burden of disclosure and inquiry away from itself, and onto Mr. Peters.

## Missing Account Numbers

22.    Making matters even more confusing for Mr. Peters, Equifax omitted the full account numbers relating to the MCM tradelines.

23.    On information and belief, this data furnisher reported the full account numbers belonging to its respective accounts to Equifax, and this information was contained within Equifax's file regarding Mr. Peters at the time of his request.

24.    When Equifax produces and sells reports regarding Mr. Peters to third parties, the full account numbers and name of the original creditors are included in its reports.

25.    The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

26.    Having a duty to disclose *all of the information* regarding the accounts in Mr. Peters' file, Equifax breached its duty by failing to provide the account numbers and original creditors' name, as such information is necessary for a consumer to be able to research and evaluate the information contained in his credit file.

27.    Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

28.    Equifax's disclosure contains a section entitled "Collections," stating: "Collections are accounts with outstanding debt that have been placed by a creditor with a collection agency.

2022SC-008278-0000-LK        Received in Polk 11/04/2022 01:59 AM

Collections stay on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score."

29.    MCM is registered with the Florida Office of Financial Regulation as Consumer Collection Agency.

30.    Thus, Equifax should have placed these tradelines under the "Collections" header of Mr. Peters' Disclosure rather than the "Other" header.

31.    In addition to missing the full account numbers from the "Other Accounts," Equifax disclosed a significant number of accounts reported by other data furnishers without account numbers.

32.    Under the heading *Revolving Accounts*, there are four (4) tradelines without full account numbers.

33.    Under the heading *Mortgage Accounts*, there is one (1) tradeline without full account numbers.

34.    Under the heading *Installment Accounts*, there are five (5) tradelines without full account numbers.

35.    On information and belief, all the aforementioned data furnishers reported full account numbers to Equifax, and this information was contained within Equifax's file on Mr. Peters at the time of his request for his consumer disclosure.

36.    Due to widespread systemic problems, Equifax's automated systems omits all but the last two to four account numbers reported by data furnishers that have a reported current payment status of "charge off," in addition to many other types of accounts.

37.    Equifax knows of this error but, despite such knowledge, has yet to correct it.

Page **5** of **18**

38.    The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.")

39.    The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

40.    The lack of accurate, full account numbers caused Mr. Peters great frustration and emotional distress when trying to understand his credit report and verify it against his own records.

41.    Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." **SEE PLAINTIFF'S EXHIBIT B.**

42.    Equifax's omission of the original creditor and full account numbers greatly decreases a consumer's ability to understand his consumer credit disclosure, identify the accounts, and compare those accounts with his own records.

**2022SC-008278-0000-LK**    **Received in Polk 11/04/2022 01:59 AM**

43. The *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association ("**CDIA**"), a trade association representing the CRAs, including Equifax, states that:

> "**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent." (**Emphasis original.**)

**SEE PLAINTIFF'S EXHIBIT C.**

44. The *Credit Reporting Resource Guide* instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." *Id.*

45. On information and belief, MCM complied with the *Credit Reporting Resource Guide* and reported the names of the true original creditors of its reported accounts.

### "Undesignated" Account Ownership Issues

46. Equifax's disclosure to Mr. Peters also contained an account reported by Synchrony Bank regarding Sam's Club ("**Sam's Club**").

47. The owner of the Sam's Club account was reported by Equifax as "UNDESIGNATED." **SEE PLAINTIFF'S EXHIBIT D.**

48. Upon information and belief, the "owner" header refers to the ***Equal Credit Opportunity Act Code*** ("**ECOA Code**") reported by the data furnisher.

49. The *Credit Reporting Resource Guide* states that the ECOA Code "defines the relationship of the consumer to the account in compliance with the Equal Credit Opportunity Act." **SEE PLAINTIFF'S EXHIBIT E.**

50. Equifax's Disclosure erroneously stated that the ECOA code was "0" or *Undesignated.*

51. The Sam's Club account could not have reported an ECOA Code of "0," since that Metro II code was retired as obsolete as of September 2003. *Id.*

52. Further, even prior to September 2003, the code could only have potentially applied to an account opened prior to June 1977.

53. The Sam's Club account was opened in January 2002 – more than **25 years** after the cut-off for accounts bearing this ECOA Code.

54. Equifax's complete omission of the relevant owner of the accounts would make it difficult to compare the information in his records with the information shown on his disclosure.

55. On information and belief, the correct ECOA Code regarding the account appears in Equifax's file on Mr. Peters.

### Prevalence of Equifax's Account Number Errors

56. On information and belief, Equifax's Disclosure to Mr. Peters was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

57. On information and belief, this same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

58. On information and belief, www.annualcreditreport.com is the location where the majority of consumers obtain their Equifax credit disclosure.

59. Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number and missing original creditor name errors.

60. Thus, *every* consumer with accounts appearing in the "Other" section of their disclosure who requested their disclosure from Equifax through www.annualcreditreport.com since the template's use began, received a consumer disclosure with the same errors as Mr. Peters.

61. Equifax's error has therefore likely affected thousands of consumers.

Page **8** of **18**

62. Equifax has known of the flaws in its systems for years, but has done nothing to fix them, despite the large number of consumers affected. *See, e.g., Justin Purdy vs. Equifax Information Services LLC,* case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

63. Equifax's knowing and repeated conduct warrants an award of ***punitive damages***.

64. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

65. Mr. Peters has a right to a full and complete disclosure of the contents of his file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

66. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Mr. Peters deprived him of this right.

67. Mr. Peters has hired the undersigned law firm to represent him in this matter and has assigned to them his right to obtain reimbursement for his reasonable fees and costs.

## COUNT I
## VIOLATIONS OF THE FCRA

68. Mr. Peters adopts and incorporates paragraphs 1 - 67 as if fully stated herein.

69. Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Mr. Peters' request for his consumer disclosure by failing to clearly and accurately disclose to Mr. Peters, a *Consumer*, all of the information in his file at the time of the request. Specifically, Equifax disclosed three (3) accounts reported by MCM without disclosing the full account numbers or the names of the *Original Creditors* and ten (10) accounts also without the full account numbers, even though full account numbers were reported by the data furnishers. Additionally, Equifax disclosed one (1) account with an ECOA code of *Undesignated.*

Page **9** of **18**

70. Equifax knowingly provided inaccurate information in Mr. Peters' disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

71. Equifax is therefore liable to Ms. Robison, pursuant to 15 U.S.C. § 1681n, for the greater of his actual damages and statutory damages of up to $1,000 per violation, plus attorneys' fees and costs.

72. Alternatively, Equifax's conduct was negligent, and Equifax is therefore liable to Ms. Robison, pursuant to 15 U.S.C. § 1681o, for his actual damages, plus attorneys' fees and costs.

**WHEREFORE,** Mr. Peters respectfully requests that the Honorable Court enter judgment against Equifax for:

a. The greater of statutory damages of **$1,000** per incident and Mr. Peters' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or Mr. Peters' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d. Such other relief that this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Mr. Peters demands a jury trial on all issues so triable.

Respectfully submitted on November 3, 2022, by:

**SERAPH LEGAL, P. A.**

*/s/ Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866

Page **10** of **18**

BScarangella@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

## ATTACHED EXHIBIT LIST

A.    Mr. Peters' Equifax Consumer Disclosure, August 16, 2022, Excerpt – *Other Accounts.*
C.    FTC Opinion Letter.
D.    *Credit Reporting Resource Guide*, Original Creditor Name Excerpt.
E.    Mr. Peters' Equifax Consumer Disclosure, August 16, 2022, Excerpt – "Undesignated" Account Ownership
F.    *Credit Reporting Resource Guide*, ECOA Codes Excerpt.

Page **11** of **18**

**EXHIBIT A**
**Mr. Peters' Equifax Consumer Disclosure, August 16, 2022**
**Excerpt – "Other" Account (redacted)**

## 5. Other Accounts

Other accounts are those that are not already identified as Revolving, Mortgage or Installment Accounts such as child support obligations or rental agreements.

### 5.1 MIDLAND CREDIT MANAGEMENT (CLOSED)

#### Summary

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| Account Number | xxxx▮▮▮ | Reported Balance | ▮▮▮▮ |
|---|---|---|---|
| Account Status | COLLECTION | Available Credit | |

#### Account History

The tables below show up to 3 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

Balance

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |
| 2022 | | | | | | | | | | | | |

Available Credit

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |
| 2022 | | | | | | | | | | | | |

Scheduled Payment

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | | | | | | | | | | | | |
| 2021 | | | | | | | | | | | | |
| 2022 | | | | | | | | | | | | |

2022SC-008278-0000-LK        Received in Polk 11/04/2022 01:59 AM

# EXHIBIT A
## Mr. Peters' Equifax Consumer Disclosure, August 16, 2022
## Excerpt – "Other" Account (redacted)

### 5.2 MIDLAND CREDIT MANAGEMENT (CLOSED)

#### Summary

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| Account Number | xxxx█████ | Reported Balance | ████████ |
| Account Status | COLLECTION | Available Credit | |

#### Account History

The tables below show up to 3 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

Balance

2020

2021

2022

Available Credit

2020

2021

2022

Scheduled Payment

2020

2021

2022

Actual Payment

2020

## EXHIBIT A
## Mr. Peters' Equifax Consumer Disclosure, August 16, 2022
## Excerpt – "Other" Account (redacted)

### 5.3 MIDLAND CREDIT MANAGEMENT (CLOSED)

#### Summary

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| Account Number | xxxx▮ | Reported Balance | ▮ |
|---|---|---|---|
| Account Status | COLLECTION | Available Credit | |

#### Account History

The tables below show up to 3 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

Balance

2020

2021

2022

Available Credit

2020

2021

2022

Scheduled Payment

2020

2021

2022

Actual Payment

2020

Page **14** of **18**

2022SC-008278-0000-LK        Received in Polk 11/04/2022 01:59 AM

**EXHIBIT B**
**FTC Opinion Letter**



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.
Asst. General Counsel
TRANS UNION
555 West Adams Street
Chicago, Illinois 60681

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . All information in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to all information in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

Page **15** of **18**

## EXHIBIT C
### *Credit Reporting Resource Guide*, Original Creditor Name Excerpt

## Field Definitions

### K1 Segment
### Original Creditor Name

The K1 Segment must be present each time the account is reported by collection agencies, debt buyers, check guarantee companies, student loan guaranty agencies, and the U.S. Department of Education. **The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent.

Some state laws and CDIA policy stipulate that the original client/creditor must be identified. Federal law stipulates that the name of the payee must be identified when reporting returned checks.

Only one occurrence of the K1 Segment can be appended to the Base Segment. If not applicable, do not report the K1 Segment.

| FIELD | FIELD NAME & DESCRIPTION | 366 and 426 FORMATS | | |
|---|---|---|---|---|
| | | Length | Position | Reporting Technique |
| 1 | **Segment Identifier**<br>Contains a constant of K1. | 2 | 1-2 | AN |
| 2 | **Original Creditor Name**<br>The content of this field is dependent on the type of reporter.<br><br>Collection Agencies: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been turned over to multiple collection agencies.<br><br>Debt Buyers: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been sold multiple times to different debt buyers. Refer to the K2 Segment for "purchased from" information.<br><br>Companies Reporting Returned Checks: Report the name of the payee; i.e., name of company to which the check was written. Refer to Frequently Asked Question 16 for additional guidelines on reporting returned checks.<br><br>Student Loan Guarantors/U.S. Department of Education: Report the name of the original student loan lender.<br><br>One of the following three options should be used when reporting a creditor's name that would reveal sensitive information about the consumer.<br><br>1. Report the name of the institution, but do not include reference to the type of service. For example, use the hospital name without identifying that it was the psychiatric unit that provided care. If a hospital's name reveals sensitive information, abbreviate the name.<br><br>2. Use the corporate name if it is different from the commercial name of a mental institution or drug rehabilitation center.<br><br>3. Do not report the account if either of the above two options would not sufficiently protect the consumer's privacy.<br><br>**Note: Encoded information is not acceptable in this field.** | 30 | 3-32 | AN |

CREDIT REPORTING RESOURCE GUIDE®                          |  4-35
*Copyright 2011 © Consumer Data Industry Association*

**EXHIBIT D**
**Mr. Peters' Equifax Consumer Disclosure, August 16, 2022 "Undesignated"**
**Account Ownership**

## 2.4 SYNCB/SAMS CLUB (CLOSED)

### Summary

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| Account Number | xxxxxxxxxxx▓▓▓▓ | Reported Balance | Redacted |
| Account Status | PAYS_AS_AGREED | Available Credit | |

The tables below show up to 3 years of the monthly balance, available credit, scheduled payment, date of last payment, high credit, credit limit, amount past due, activity designator, and comments.

### Payment History

You currently do not have any Payment History in your file.

### Account Details

View detailed information about this account. Contact the creditor or lender if you have any questions about it.

| | | | |
|---|---|---|---|
| High Credit | Redacted | Owner | UNDESIGNATED |
| Credit Limit | | Account Type | REVOLVING |
| Terms Frequency | | Term Duration | 0 |
| Balance | | Date Opened | Jan 30, 2002 |
| Amount Past Due | | Date Reported | Oct 09, 2015 |
| Actual Payment Amount | | Date of Last Payment | Jan 01, 2006 |
| Date of Last Activity | | Scheduled Payment Amount | |
| Months Reviewed | | Delinquency First Reported | |
| Activity Designator | | Creditor Classification | UNKNOWN |
| Deferred Payment Start Date | | Charge Off Amount | |
| Balloon Payment Date | | Balloon Payment Amount | |
| Loan Type | Charge Account | Date Closed | Mar 01, 2006 |
| Date of First Delinquency | | | |

Page **17** of **18**

2022SC-008278-0000-LK    Received in Polk 11/04/2022 01:59 AM

## EXHIBIT E
## Excerpt from Credit Reporting Resource Guide – ECOA Codes

Exhibit 10

### ECOA Codes

The ECOA Code defines the relationship of the consumer to the account in compliance with the Equal Credit Opportunity Act. This code is reported in Field 37 of the Base Segment and Field 10 of the J1 and J2 Segments. Values available:

| Code | Description | Definition | Logical Usage |
|------|-------------|------------|---------------|
| 1 | Individual | This consumer has contractual responsibility for this account and is primarily responsible for its payment. | • Most commonly reported in Base Segment<br>• May be reported in J1 or J2 Segment when Base Segment consumer is reported with T, K or Z |
| 2 | Joint Contractual Liability | This consumer has contractual responsibility for this joint account. | • Base, J1 or J2 Segment |
| 3 | Authorized User | This consumer is an authorized user of this account; another consumer has contractual responsibility. | • J1 or J2 Segment |
| 5 | Co-maker or Guarantor | This consumer is the co-maker or guarantor for this account, who becomes liable if the maker defaults. | • J1 or J2 Segment |
| 7 | Maker | This consumer is the maker who is liable for the account, but a co-maker or guarantor is liable if the maker defaults. | • Most commonly reported in Base Segment<br>• May be reported in J1 or J2 Segment if more than one maker on account |

(continued)

CREDIT REPORTING RESOURCE GUIDE®                                                5-40
Copyright 2011 © Consumer Data Industry Association

Page **18** of **18**